UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

D'ANGELO NEWBON,

    Plaintiff,

v.                                                                          Case No. 09-C-477

MILWAUKEE POLICE DEPARTMENT, et al.,

    Defendant.

## DECISION AND ORDER

Plaintiff brought this action seeking damages under 42 U.S.C. § 1983 for several alleged violations of the Eighth and Fourteenth Amendments. This Court has federal question jurisdiction under 28 U.S.C. § 1331. Presently before the Court is a motion for summary judgment filed by Defendants.

Plaintiff alleges his interactions with Milwaukee Police Department ("MPD") officers on August 8, 2008, constituted cruel and unusual punishment. Plaintiff has made accusations against Officer Bughman for intentional infliction of pain and against Sergeant Jackson for deliberate indifference towards Plaintiff's serious medical needs. Plaintiff has also made allegations that inadequate policies of the City of Milwaukee, training of MPD officers, and supervision by Chief Edward Flynn resulted in the behavior that led to his cruel and unusual punishment. For the reasons set forth within, I will grant the motion for summary judgment in favor of the Defendants on all counts.

## BACKGROUND

On August 1, 2008, Plaintiff severely broke his leg as he fled from police. (Defendant's Proposed Findings of Fact "PFOF", Dkt #82, ¶6.) He was given medical treatment at a nearby hospital after being apprehended. (PFOF ¶7.) Once cleared by doctors for release on August 8, 2008, Plaintiff was taken by the Milwaukee Police Department to their Prisoner Processing Section ("PPS"). (PFOF ¶9.) Plaintiff was given a wheelchair upon his arrival. (PFOF ¶11.) On the way to his cell, Plaintiff decided to use the metal walker given to him at the hospital rather than the wheelchair that MPD provided. (PFOF ¶11.) The officers permitted this until he arrived at his cell. (PFOF ¶11.) At that time, the metal walker was taken from him and set outside his cell for safety reasons. (PFOF ¶11.) The cell Plaintiff was assigned was a single cell without handicap amenities. (Dkt #94, Ex D.) After being put into his cell, Plaintiff complained of physical discomfort to his leg and asked for his prescribed pain medication. (PFOF ¶12.) The officers informed Plaintiff of the MPD Standard Operating Procedures ("SOP"). (PFOF ¶12.) The SOP declares that no officer may administer medication to individuals in custody. (Dkt #94, Ex E, 90.50(C)(3).) The SOP also says that for non-emergency medical situations, officers are to bring the individual in need of medical care to the local hospital to be cared for. (Dkt #94, Ex E, 90.50(C)(4)(b).) Consistent with the MPD SOP, Sergeant Jackson denied Plaintiff's request for medication and arranged for transportation to the local hospital. (PFOF ¶13.) Within approximately one hour, two officers, one of which was defendant Officer Bughman, arrived to transport Plaintiff to the hospital. (PFOF ¶14.) Plaintiff claims that while the officers were in the process of assisting him into the police van, Officer Bughman dropped his leg between 1-2 feet so it hit the ground, causing pain to Plaintiff's injured leg. (PFOF ¶16.) Plaintiff believes this act was intentional because he saw Officer Bughman

2

laugh after the supposed leg drop. (PFOF ¶18.) Officer Bughman recalls assisting Plaintiff into the van, but denies ever dropping his leg. (Bughman Affidavit, Dkt #83, ¶9.) Officer Bughman continued to assist Plaintiff into the police van and transport him to the hospital. (PFOF ¶19.) Upon arrival at the hospital, medical professionals administered Plaintiff's medication and looked at his leg for further injuries at his request. (PFOF ¶20.) No further damage was found at that time. ( Dkt #94, Ex. F, G.)

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the non-moving party has the burden of proof at trial, the non-moving party must make a showing beyond mere pleadings that there is a genuine issue of fact for trial to avoid summary judgment. *Celotex*, 477 U.S. at 324. For the purposes of summary judgment, all genuine issues of fact must be viewed in the light most favorable to the non-moving party.

Plaintiff is protected by the Fourteenth Amendment as he is a pretrial detainee. *Carr v. Beth*, 10-C-1017, 2011 WL 679412 (E.D. Wis. Feb. 16, 2011). The law is clear that those who have not been found guilty may not be "punished" by the state in any way. *Wilson v. Williams*, 83 F.3d 870

3

(7th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The right to due process under the Fourteenth Amendment "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010) (citing *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009)). However, because the Seventh Circuit has not expanded on what extra protections would be afforded to a pretrial detainee, the Court substitutes the Eighth Amendment standard when dealing with such claims. *Forrest*, 620 F.3d at 744 (citing *Lewis*, 581 F.3d at 475); *Carr v. Beth*, 10-C-1017, 2011 WL 679412 (E.D. Wis. Feb. 16, 2011).

The general test for the Eighth Amendment bars "unnecessary and wanton inflictions of pain," particularly when "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2001). The Supreme Court has applied this test differently in cases based on the claim involved. In claims involving allegations of inadequate medical care or general incarceration conditions, the standard is whether the defendant was deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007). In claims involving allegations of excessive force, the standard is whether the defendant inflicted a minimal injury "maliciously and sadistically for the very purpose of cause harm." *See Hudson v. McMillan*, 503 U.S. 1, 6 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). Plaintiff alleges violations that encompass a wide range of range of standards; therefore, each claim must be analyzed independently.

**I. Defendant Sergeant Sammy Jackson and the allegation of deliberate indifference**

Plaintiff alleges that Sergeant Jackson acted with deliberate indifference on two separate occasions. First, Plaintiff claims that Sergeant Jackson deliberately withheld prescribed medication,

4

indifferent to Plaintiff's pain. Second, Plaintiff claims that Sergeant Jackson deliberately placed him in a normal cell without his walker, indifferent to Plaintiff's specific need of a cell with handicap amenities. Summary judgment will be granted in favor of Jackson on both claims for the following reasons.

To claim that prison officials administered inadequate medical care in violation of the Eighth Amendment, Plaintiff must show deliberate indifference on the part of the prison officials. *Estelle*, 429 U.S. at 106. Plaintiff's claim of deliberate indifference requires a showing of both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer*, 511 U.S. at 834 (1994).

A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Plaintiff's allegations of deliberate indifference in medication denial meet the objective element of the test. A medical professional had prescribed him pain medication to address an injury. While Plaintiff is not subject to physical harm by missing a dose of medication in the present case, physical harm is not the only type of harm that should be considered by the Court. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). The pain Plaintiff suffered due to denial of medically mandated treatment will suffice. A doctor had prescribed the medical treatment of strong prescription painkillers. Because the prescribing doctor found the medication necessary to prevent

5

substantial pain, it follows that his inability to take his recommended dose guarantees the onset of substantial pain. This meets the objective element.

Plaintiff also meets the objective requirement on his metal walker claim. Plaintiff was suffering from a badly broken leg which a doctor had mandated specific treatment for. His leg brace was visible and Sergeant Jackson had allowed Plaintiff's use of a walker at the PPS until he was put into a cell. It is clear that Plaintiff had a need for medical treatment of some sort.

However, Plaintiff's allegations fall short on the subjective component of the deliberate indifference test. The subjective component of a claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Edwards*, 478 F.3d at 831; *Farmer*, 511 U.S. at 834; *Greeno*, 414 F.3d at 653. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837 (1994).

In the medication claim, Plaintiff fails the subjective element of the test. There is no evidence put forward by Plaintiff that indicates MPD or its officers disregarded the pain he was suffering. In fact, Plaintiff's own complaint states that Sergeant Jackson answered Plaintiff's call for assistance, inquired as to his discomfort, informed him of department policy against dispensing medications, and arranged for Plaintiff to be taken by officers to the hospital so that he could have his pain medication administered. No action taken by Sergeant Jackson could be construed as disregarding substantial pain. Each act he took was to accommodate Plaintiff's substantial pain according to the MPD SOP policies. Therefore, the subjective element must fail.

Plaintiff also fails the subjective element on his metal walker claim. Plaintiff does not put forth any evidence that suggests Sergeant Jackson was aware that placement without his walker into a small 5x8 cell with a bed and toilet put Plaintiff at a substantial risk of harm. Although Plaintiff expressed a desire to keep his walker in his cell, this is not evidence that Sergeant Jackson was aware of a legitimate medical need. Plaintiff's own doctor refuses to acknowledge that the walker was required for Plaintiff to stand up. (Declaration of Dr. Jacqueline Mlnsa, Dkt #94, Ex. R at ¶12.) Even if Sergeant Jackson were aware of a risk, there is no evidence that Sergeant Jackson disregarded the risk. Plaintiff was told he could not have the walker as it could be used as a weapon. The decision to remove the walker may have been made after thoughtful consideration of the conflicting interests. There is no evidence showing that any risk to Plaintiff was disregarded. Without evidence that Sergeant Jackson was aware of the danger and disregarded that danger, the subjective element must fail.

Because Plaintiff has not put forth any evidence besides allegations of the subjective element of either claim, summary judgment in favor of Defendant on both claims is appropriate.

**II. Officer Bughman and the allegation of the leg drop**

Plaintiff alleges that Officer Bughman hurt Plaintiff's leg while assisting him into the waiting police van in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Eighth Amendment protects against "unnecessary and wanton inflictions of pain." *Hope* 536 U.S. at 737. Here, Bughman denies dropping Plaintiff's leg, while Plaintiff argues that he did. There is thus a question of material fact on the question of whether Plaintiff's leg was dropped.

Yet there is no genuine question of fact as to Bughman's intent, assuming he *did* drop Plaintiff's leg. In his response to the Defendants' proposed findings of fact, Plaintiff states that Bughman was negligent in dropping his leg. (Dkt. # 94 at 4.) If the drop was negligent, then it was not wanton or intentional. It was simply an accident (that Bughman may have found amusing, for whatever reason). "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Elsewhere, Plaintiff suggests the leg drop was intentional. "[P]laintiff does recall a smile (smirk) on the defendants [sic] face immediately after the leg drop, which led plaintiff to determine that it was intentional, not an accident . . ." (Dkt. # 94 at 6.) The Plaintiff's subjective perception of an officer's intent does not suffice to create a genuine issue of fact. Given the unusual circumstances here – officers attempting to lift a hobbled inmate into a transport van – it is far easier to infer that if a leg drop occurred it was accidental. Under these circumstances, a Plaintiff would need more than a smirk to get to a jury on the question of intent. For example, the officer could have said something hinting that the drop was intentional, or the Plaintiff could have witnessed the officer deliberately let go of his leg. An inference based on a mere smile is simply not enough.

### III. Whether official policies violate the Eighth Amendment

Disregarding the fact that the City of Milwaukee is not a named defendant in this case, the Plaintiff claims that City and MPD policies resulted in a violation of Plaintiff's rights. A § 1983 claim may target municipalities which have violated constitutional rights. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978). However, Plaintiff's claims do not meet the evidentiary threshold required to survive a motion for summary judgment.

A § 1983 claim must allege that a constitutional deprivation resulted from a policy that has been put into place by the City. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). The constitutional deprivation must have resulted from an organizational-wide policy, as the actions of a single government worker do not give rise to municipal liability. *Monell*, 436 U.S. at 694. To make a showing that there is a policy, Plaintiff must demonstrate the municipality approved the actions taken in the form of a formal policy or by making a showing of an established practice or custom. *Monell*, 436 U.S. at 658; *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff has put forward the MPD SOP as evidence of a formal policy. For the SOP to have effect under § 1983, it must have been approved by an employee with final authority to set official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). When determining whether an employee has final authority, the Court is to look at the state or local law. *Praprotnik*, 485 U.S. at 124-25. For the purposes of this motion, the Court will assume – but not declare – that the SOP represents an official policy of the City.

In a *Monell* claim, a single incident cannot be the basis for establishing that a practice or custom exists. *Thomas*, 604 F.3d at 303. Plaintiff's situation alone cannot be grounds for establishing that an unconstitutional practice or custom exists. Here, Plaintiff has not alleged or put forth any evidence of other incidents that would establish a practice or custom. Therefore, only an implicit policy (or gap in expressed policies) will meet the baseline requirements for a *Monell* claim. *Thomas*, 604 F.3d at 303; *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006).

A single officer who takes action outside of official policy guidelines cannot create a liability for the municipality. *Monell*, 436 U.S. at 694. Therefore, only the actions taken by officers consistent with the SOP are relevant to Plaintiff's management, training, and policy allegations.

9

**A. Failure to give Medical Training to Officers at PPS**

The City of Milwaukee is not liable for a failure to train officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91. It is not sufficient to show that an injury or accident could have been prevented by more or better training. *Id.* at 391. Plaintiff must "prove that the deficiency in training actually caused the police officers' indifference to [his] medical needs." *Id.* at 391. "The need for additional training must be very obvious, and its absence extremely likely to result in the violation of constitutional rights.*"* *Viilo v. City of Milwaukee*, 552 F. Supp. 2d 826, 844 (E.D. Wis. 2008).

Granting summary judgment is appropriate because Plaintiff has not put forth any evidence that a failure to train officers caused them to act with deliberate indifference resulting in a violation of his constitutional rights. Plaintiff alleges that MPD should have required additional medical training for officers at the PPS. This Court finds no support for Plaintiff's argument.

The PPS is not a hospital or a long-term jail; the PPS is a short-term holding facility. The SOP has specific clauses regarding medical care:

> If a prisoner requests medical attention, the arresting/conveying officers shall either call or appropriate medical attention or transport him/her to a medical facility for treatment.

(Dkt. #94, Exh. E, SOP 100.15(B)(6)(b).)

> If the PA-45 is not completed or the prisoner will not arrive at CJF prior to the time of the necessary dosage, the prisoner shall be conveyed to the nearest medical facility along with his/her medication (if available). The prisoner shall be transported by a

10

police patrol unit in non emergency situations and by an ambulance or Fire
Department Paramedic Unit in emergency situations.

(Dkt. #94, Exh. E, SOP 090.50(C)(4)(b).)

In light of these provisions in the official policy and the nature of the PPS, the lack of medical training of officers is neither an obvious oversight nor "extremely likely" to result in cruel and unusual punishment of prisoners. The Plaintiff has not put forth sufficient evidence for a jury to find that the lack of medical training for officers constitutes a substantial health risk to detainees.

### B. Failure to Supervise Officers

Plaintiff has not put forth any evidence for his claim of failure to supervise, therefore summary judgment in favor of Defendants is appropriate. "[A] failure to supervise gives rise to § 1983 liability . . . only in those situations where there is a history of wide-spread abuse. Only then may knowledge be imputed to the supervisory personnel." *Bush v. Ware*, 589 F. Supp. 1454, 1463 (E.D. Wis. 1984) (quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)).

Plaintiff has not put forth evidence that any official was aware of wide-spread problems with supervisory policies. Without evidence of wide-spread problems and evidence that an authoritative policy decision maker was aware of them, this claim cannot survive a motion for summary judgment.

### C. Failure to Provide Handicapped Cell for Plaintiff

Plaintiff's allegation that MPD policy is a violation of the Eighth Amendment is flawed. Only an implicit policy (or gap in expressed policies) will meet the baseline requirements for a *Monell* claim. *Thomas*, 604 F.3d at 303; *Phelan*, 463 F.3d at 790. Plaintiff has not pointed to any policy that refuses to provide reasonable accommodation for handicapped prisoners. A lack of an official policy cannot be read to imply that MPD never makes accommodation for handicapped

11

prisoners. Nor has Plaintiff put forth evidence to show that there is a gap in the policies such that a refusal is implied. The Plaintiff has not put forth sufficient evidence in this case to show an official policy exists with regards to handicapped prisoners.

This leaves only the practice or custom demonstration of municipal acquiescence to a particular unconstitutional practice. However, a single incident cannot be the basis for establishing that a practice or custom exists. *Thomas*, 604 F.3d at 303. Plaintiff has not pointed to any evidence that this has happened more than once. Granting summary judgment is appropriate since the claim against the officials in charge of the policy does not meet the minimum requirement for a *Monell* claim.

### D. Failure to Maintain Adequate Information System

Plaintiff's last *Monell* claim alleges that the communication and information system of MPD was inadequate to deal with his medication needs, resulting in cruel and unusual punishment. It too falls short of surviving summary judgment. Because Plaintiff does not put forth any evidence of another incident, custom or practice cannot be used to show that an unwritten policy was in effect. Plaintiff must rely on the written procedures of the SOP as his only showing of official policy.

The medication portion of the SOP is located at 090.50(C). (Dkt. #94, Exh. E, SOP 090.50(C).) In summary, it requires officers to: make a reasonable attempt to obtain personal medication for prisoners and keep it on site; notify shift commander when prisoners request medication; not personally administer medication; and, if medication is needed, transfer prisoner to either the Criminal Justice Facility or a local hospital where the medication can be administered. Nothing in the SOP suggests there is an inadequate information system. The Court would not characterize the system as flawless, but a policy is not required to be the best policy – just a constitutional one.

Waiting for detainees to notify officers of medical needs before transporting them for medical care is not a policy that causes or facilitates cruel and unusual punishment of prisoners. It is merely a policy that does not actively prevent it. The Plaintiff has not put forth sufficient evidence for a jury to find that the medical information policy is disregarding a substantial health risk to detainees. Therefore, granting summary judgment is appropriate.

For the reasons given above, the motion for summary judgment is **GRANTED**.

**SO ORDERED** this   30th   day of August, 2011.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
